0710 to 07, United States v. Perez. Each side will have 10 minutes. Good morning, Your Honor. Good morning. Counsel, may it please the Court, after I videotaped that decision Could you get your name for the record, please, sir? I'm sorry, Your Honor. Adrian Fontes practiced in Phoenix, Arizona. Thank you, sir. And was trial counsel. After a videotaped deposition taken under 1324D was not recorded by the government, the government successfully convinced the district court to abuse its discretion to shift the burden for preserving trial evidence onto the defense, arguing a number of waivers that case law says that the defendant fundamentally cannot waive. Let's back up here, Mr. Fontes, to make sure I understand what happened here. Yes, sir. There was a malfunction in the video recorder, and so we ended up with an actual transcript, which I assume was prepared by a court reporter. But for whatever reason, we don't have the videotape itself, right? That's correct. And the parties had stipulated under, what is it, Rule 15 to the Rules of Criminal Procedure so that the material witness could be released from custody and go back to Mexico. Your Honor, we stipulated to the release of the witness, but we never made any stipulations as to the evidence or the transcripts. Your argument is that, in essence, in hindsight, now that we know that the tape was bad, that the material witness should not have been released until a transcript was prepared and the witness actually had the opportunity to review the transcript, make any corrections, and then sign it, correct? We're always hopeful that the government will follow the rules. Yes, Your Honor. Is there any prejudice here? I'm not clear what. Absolutely, Your Honor. By bringing this testimony in, the – and the case law is very clear in this. We go all the way back to Maddox. The jury was denied the capacity to actually observe the testimony of the witness. No, I understand that because this tape was destroyed. But what's the prejudice? As I understand it, the material witness gave some very favorable testimony to your client. He said he just waved down a passerby. Your Honor, although there was favorable testimony, there was no other testimony at all to establish the material witness's alienage at all. And so without being able to infer from that testimony that he may very well have been an illegal alien, the government cannot meet elements one and two of the alleged offense and would therefore have to have been acquitted. Do you think there is some credibility question about his alienage? I certainly do, Your Honor. On cross-examination, I actually asked him if, after understanding that he doesn't know what immigration law is, could he in fact actually be here in the country legally. And he said, yeah, he may have been. So there certainly is a credibility question. During direct, he said, I'm an illegal alien. During the cross, he actually testified that he may very well be in this country legally. His demeanor bared on that in some fashion? Absolutely, Your Honor. I would never be able to – and as a matter of fact – But when you cut to the chase, this happens all the time with unavailable witnesses and you have a transcript and you don't get a chance to see them in a video tape necessarily. So you have two pieces of evidence here. One is I am an illegal alien. The other is it's certainly possible I might not be. I might be here legally. So the jury has both of those. What – I'm having trouble understanding the prejudice in having the transcript in that case. Is it because he didn't get to sign it and say, well, that's exactly what I said? So in other words, I'm trying to unpack your argument a little bit. Is it that he didn't sign it? Or is it just that it's a transcript, not a video? The prejudice is that my client was caused to waive a fundamental right. Where U.S. v. Provencio indicates quite clearly that a defendant cannot – But the fundamental right is the right to cross-examine the witness and you certainly availed yourself of that right, did you not? That's certainly part of it, Your Honor, but the confrontation clause – And he knew and you waived at the time that that deposition was completed. You waived the actual physical presence of the material witness at trial. Your Honor, again, by saying that we didn't need him at trial, what we're actually doing – Well, actually the government is shifting the burden onto us. No, no, no. We now are expected to preserve the witness. You're not addressing my question. I see two constitutional rights here. One, the opportunity to confront, cross-examine. Two, the right to have the witness at the trial. And as far as I can tell, both those rights were afforded and or waived. And now we get to the question of how was your client prejudiced by virtue of the fact that a transcript was used in lieu of a videotape for a witness that everybody agrees was unavailable at that point? We, Your Honor, expected and we were on notice, which is also a requirement under Rule 30 of the Civil Procedure Rules. We were on notice that this would be a 1324D audio-video recorded deposition. It was not. And the government is now arguing that we have to preserve their evidence or we have to somehow keep the witness here if we want them – if we want the jury, which is a defendant's fundamental right as part of the Confrontation Clause, to have the jury assess the demeanor. So don't we really – to rule in your favor, we really have to find that it is a constitutional right in this circumstance to have either the physical presence of the witness or a flawless videotape that a transcript, which is otherwise accurate as far as I can tell, nobody's questioning the accuracy of the transcript, is not good enough in order to comport with the Constitution? No, that's not what we're asking, Your Honor. We're asking that – Do we have to find that, though, in order to grant you the relief that you – No, certainly not, Your Honor. We anticipated a 1324 – I'm still wrestling with the same question that my brother and sister are wrestling with. The prejudice is that we anticipated the face-to-face confrontation with the jury under 1324d. And because the government – and it was a joint motion to release the witness. The government knew that they were going to have that piece of evidence, and they knew that that was the evidence that they were intending to introduce. They also knew that there was a transcriptionist in there. We also have to assume that they knew the rules of procedure. And it wouldn't have been that big of a deal to keep the witness until the signature was actually had under Rule 15. Okay. So now we're back to my original question. Is – now your complaint appears to be that the transcript wasn't signed. Is that one of your complaints? It is a – they're part and parcel here. Because, I mean, well, they are and they aren't. I am sympathetic to the argument that you went down this path with the understanding that there would be a videotape. And then the witness is released, there will be a videotape, and the jury will be able to see the videotape. We now know that the videotape wasn't produced due to malfunction. So when your argument then shifts to the issue of the signature, that really is a transcript issue. And that's when I go back to my original question. Are you contesting the legitimacy of the transcript? Because that's all the signature does in any deposition, is basically to affirm the accuracy of the transcript. So if that's your argument, are you now arguing that somehow the transcript is not reflective? I think that goes to the concept of what we always do in trial, and that is swear a witness. We don't know. I don't know what you're talking about, swearing a witness. The witness was sworn here, wasn't it? Before he testifies, he's sworn. You have to request the signature. The signature is the whole purpose of the signature is if there's some problem, and particularly if you've got a translation, if there's a problem with the translation or a problem with the transcription. That's the purpose of the signature. So it's not that he wasn't sworn and it's not that he wasn't cross-examined. I'm just trying to understand how the signature affects the fairness here. If the signature wasn't required by the rule, we wouldn't be making the argument. It's not required by the rule. You can waive it. It's waived unless you request signature. Did you request signature? Rule 15, there is no waiver under Rule 15. Rule 15, Your Honor. The civil procedure which apply here require you to either, that either you have to request signature or the witness has to request signature, failing which it's waived. Now, my question to you is, did anybody request signature? No, Your Honor. Okay. You're out of time, I see. You have about 40 seconds left. I'll reserve the last 40 seconds. Thank you. Good morning. Good morning. My name is Tracy Bardorf. I'm an assistant United States attorney, and I apologize in advance for my cough. The first issue, as the Court has just discussed, Rule 30 at the time this deposition was taken, which was 2006, did not require review or signature by the deponent unless it was requested by the deponent or the party, either party. And in this case, it was not requested. And in the SCR, we included the signature page by the court reporter for the deposition, which specifically the reporter or, excuse me, the reporter is required by the rule to attest whether or not review and signature was required or requested. And in this case, it was not. I'd like to ask you about the relevancy issue, okay? Was there any evidence at the trial that Mr. Perez was part of an organization for smuggling? The testimony was offered. No, there was no eyewitness testimony about an organization. Any evidence whatsoever that he was part of an organization? No. That testimony was offered to show the concept. Okay. Well, if there's no evidence that he's part of an organization, I don't understand the relevance of how an organization works if he's not part of the organization. The word organization came up on cross-examination and was offered on cross-examination to probe the expert. The expert was offered to explain how smuggling works, how the routes work. Okay. Was there any evidence that he was part of a group? No, there wasn't, Your Honor. Okay. Then what's the relevance of it? To explain how he is a driver who is disassociated from this group and simply – What group? He's not – you just said there's no evidence that he was part of a group. The group of passengers, Your Honor. The material witness had testified that he had crossed the border with a group of aliens and they had simply walked to a place where a road was and then asked for a ride. It was the government's theory – Okay.  And if there's no other evidence, then you lose, right, because he's just a Good Samaritan giving somebody a ride. That's the total evidence before the jury. We still wouldn't lose, Your Honor, because if he knows he's transporting illegal aliens, then he's still guilty of the offense. He doesn't have to be part of a larger organization. So if he sees an alien starving in the desert, he gives him a ride, he's guilty, or does it have to be in furtherance of their effort to enter the United States? It does have to be in furtherance of their efforts to be in the United States. Okay. Now, there is no other evidence that he – that your guy was advancing their entry into the United States other than the modus operandi evidence, as far as I can tell. And that he was transporting them from the desert in the direction of the freeway. Right. And the only evidence of that is the material witness says, we were stuck there in the middle of nowhere and we waved down a passerby. He gave us a ride. Correct? That's correct. So the only way to establish that this was in furtherance of transporting illegal aliens to get them into the United States is your modus operandi evidence. That's correct, Your Honor. Okay. Now, if there's no evidence that he's part of some kind of group or smuggling, I don't understand the relevance of this. The relevance, again, is to explain his conduct and what he knew, or for the jury to make a conclusion about what he's doing out there, what he should be – what he knows when he sees this group out there, and what his purpose may be in transporting this group. That's different than talking about routes that are used in proximity to the border. I mean, you may or may not be able to infer the proximity of the border, seven people showing up in the middle of nowhere. But you're going back to the organization evidence at this point, correct? Correct, Your Honor. So you need that organization evidence to make your conviction. It is part of the case to explain – I think that's right – to explain, not necessarily organization evidence, but to explain, again, the testimony was that individuals do not work in a vacuum in smuggling. There are guides, there are drivers, there are people who are organizers. In this case, the material witness had testified he had made arrangements with someone else in Mexico. Then they had been led on foot by a guide, and then they had been picked up by the defendant. And was there anything to link him to this overall operation? Not other than the fact that the aliens had been told to go to the road and wait, and then the defendant had come along early in the morning. There was testimony that just – He says they flagged down a passerby. I mean, he doesn't say he came where the people would come pick you up and help you with this next leg of your trip. That's correct. He says they flagged down a passerby. That's correct, Your Honor. Okay. So what evidence is there to contradict that? There isn't any evidence to contradict that, Your Honor. And, again, that evidence was – What about the high-speed chase? Did I miss something in this case? I mean, it seems to me that if the defense theory is this was just an innocent pickup driver who happened to be doing a good turn for these folks who are lost in the desert, as soon as a marked border patrol car comes up behind him and turns on his emergency lights, he leads them on a high-speed chase at 80 to 85 miles an hour, and eventually I guess the truck is disabled and everybody bails out. So it – I mean, I assume the government pointed to that evidence at the trial to debunk this theory that this was just the good Samaritan who happened to be passing by in his pickup truck. That's right, Your Honor. The government also introduced evidence that the defendant is a United States citizen. The defendant's birth certificate was admitted at trial. He was born in the United States. And that was the proof. What does that prove? So were we. I understand. But it was the government's theory that a United – You're probably going to bring an expert testimony and convict Judge McKeown. I promise I won't. I'm going to stay on this side of the bench. No. It was part of the government's theory that a United States citizen does not have reason to flee from the border patrol. People who flee from the border patrol have reason to flee from the border patrol. Well, can't we – taking Judge Thomas' point, can't we deduce that the driver, Mr. Perez, must have known these people were illegal? As I was about to say, Your Honor, people who flee from the border patrol are people who are either committing immigration offenses or – Okay. So I concede to you the driver knew that these people were illegal aliens. What evidence do we have that they were – he was transporting them to help them get into the United States illegally as opposed to giving them a ride because he was flagged down and he was told they were hungry and stranded? Well, again, the flight and the fact that he then flees from border patrol, which is, again, in furtherance of their illegal presence in the United States, because to get them away from border patrol, and, again, there was significant testimony about heading towards the I-10, is to get them away from border patrol and get them onto the freeway and to points interior to the country, which, again, was part of Agent McHugh's testimony and also the border patrol agents who were involved in the chase's testimony that he was attempting to get to the I-10. All of his directions during the evasive maneuvers in the chase were towards the I-10 and off of the farmland. I have nothing further unless the Court wishes to review the issue of the deposition transcript again. We'd simply point out that for the Court to hold that the deposition tape, barring any procedural violations of the rules of procedure or the rules of evidence, which were not violated in this case, essentially the Court would have to find that 804b1 violates Crawford because 804b1 allows for prior testimony to be admissible when a declarant is unavailable and has no requirement of a videotape, and often testimony is admitted that way without a videotape, and that has never been held to be somehow a violation of confrontation. Thank you. Mr. Pontius, you have about a half minute left. Thank you very much, Your Honor. As to the second issue and the question of relevancy, when the agent flat out said that this case was only about transporting and that none of the extra evidence of conspiracies or organizations applied, when he said that this was not part of this case, he was telling the jury that it's not part of the case. After that on redirect, counsel went and asked more questions, specifically speaking to organizations, and used the same arguments in closing. Counsel for the government made this case about organizations when there is no relevancy here, and I would point out as to your question, Your Honor, that chase didn't immediately happen. There is evidence in testimony from the Border Patrol agent that there was slow speed following and there were at least two or three turns made, and later on. Accelerated to 85 miles an hour? But that didn't happen while they were on the road. They went into it. So what? So what? It was cool for the first part until the agents hit him with the lights and then the chase is on. Well, Your Honor, there could be a – that's exactly the point. So what? That doesn't mean that he's part of a conspiracy either. That doesn't sound to me like a fact that inures in the favor of the defendant. That is a fact based on the conviction here from which a reasonable fact finder could conclude the defendant knew that these folks were illegal aliens and he was hoping to escape the Border Patrol. Well, as the jury instruction says, there may have been a number of reasons. But the thing is – Well, then to look at the conviction and the evidence and the inferences, isn't the light most favorable to support the conviction, do we not? That's certainly correct, Your Honor. But I also think – An irrational finder of facts so conclude based on the conduct of your client when the Border Patrol hit him with the light? Only after the district court allowed all of this irrelevant evidence in. Certainly. I think so. But if it was relevant, if all of Agent McHugh's testimony – I agree. It's obviously an abuse of discretion standard, and this may be a close one. But if the theory of the defense is we just flagged down this passing Good Samaritan, the government has to respond to the defense theory and introduces evidence not only of flight but that drug smuggling organizations use drivers who are assigned to meet groups of aliens in the desert, and this guy was no Good Samaritan because as soon as the marked police vehicles show up, the chase is on. And that that is consistent with a drug smuggling enterprise, is it not? Your Honor, without that evidence, all you have is the driver speaking to a person, not the material witness, in a language that the material witness did not recognize. We don't know. There is reasonable doubt, absolutely. Even in the light most favorable to the government. Because the person who the driver spoke to, the person who my client spoke to, was in the cab of the pickup truck. We have no idea at all what was said or what was done inside of the cab of that pickup truck. Reasonable inferences have to be established there. There's no evidence at all. They brought the wrong material witness, frankly, and they used Agent McHugh's testimony to build a human smuggling organization case out of what Agent McHugh said was, quote, from the transcript, page 194, as far as I know, sir, it's just a transportation of illegal aliens case. They made it a different type of case. And I'm quite a few minutes over. You're right. And I do appreciate the court's indulgence. Thank you. We'll stand and recess for the morning. Thank you very much.
judges: Silverman, McKeown, Tallman